Argued November 13; reversed November 19; rehearing denied
December 17, 1940

# CROISANT *v.* CROISANT ET AL.

(107 P. (2d) 115)

*Norman K. Winslow* and *Joseph B. Felton*, both of Salem (W. C. Winslow and Lyle J. Page, both of Salem, on the brief), for appellants.

*Orval N. Thompson*, of Albany (Weatherford & Thompson, of Albany, on the brief), for respondent.

LUSK, J.  This is a proceeding brought by a judgment creditor against the judgment debtor and the sheriff of Marion county to compel the sheriff to correct a mistake in his return of a sale of real property on execution. From an order of the circuit court granting the relief prayed for, the defendants have appealed.

Plaintiff recovered judgment against the defendant, Sophia Croisant, in the circuit court for Marion county in the sum of $3,432.94, with interest thereon at four per cent per annum from January 5, 1933, $300 attorneys' fees, and $24 costs. Execution issued out of such circuit court under date of February 6, 1933, directing the sheriff to sell certain described real property in Marion county, then under attachment, to satisfy such judgment. The sale was held on the 18th of March, 1933. On the same day the sheriff executed a return of sale which, as it now appears on file with the clerk, shows in one place that the property in question was sold for the sum of $3,831.75, being the full amount of the judgment and costs of the sale, and in

another place that the sale price was $2,931.75, thus leaving the judgment unsatisfied in the amount of $900. The plaintiff claims that the property was actually sold for $2,931.75 and demands an order of the court directing the defendant sheriff to execute and deliver to the plaintiff a deed so reciting.

Although, as stated, the sale was held on the 18th of March, 1933, this proceeding was not commenced until the 28th of February, 1938, and no hearing was held until the 15th of May, 1939. Various causes which have no material bearing on the decision contributed to those delays, although, as will appear, the long lapse of time between the transaction in question and the day when the witnesses attempted to relate what occurred is not without its bearing on the proper disposition of the case.

At the time of the sale the plaintiff was represented by Mr. J. R. Wyatt, a reputable attorney of Albany, Oregon. As a witness for plaintiff he testified that he attended the sale with his client and that, after ascertaining at the sheriff's office that there was a large amount of delinquent taxes against the property to be sold, he determined, with his client's approval, to bid the sum of $2,931.75. His client then had under attachment other real estate in Benton county, and it was their purpose, he testified, to satisfy the judgment that would remain, namely, the sum of $900, out of the Benton County property. Mr. Wyatt further testified that he wrote some figures, including the amount of the intended bid, on the back of an envelope which he held before him at the time that the sale was cried. He further testified that he had never seen the sheriff's return of sale until it was shown to him in the courtroom at the hearing.

The plaintiff corroborated Mr. Wyatt as to the amount of the bid which they had agreed upon, and also as to the circumstance of Mr. Wyatt having written the figures upon an envelope which he held in his hand at the time that the sale was cried.

When Mr. Wyatt was first on the stand he was unable to produce the envelope to which he referred. Later on it was discovered, attached to an affidavit which the witness had made under date of April 24, 1937, in another proceeding in the same case. In this affidavit he swore that he had paid, at the request of the plaintiff, the sum of $2,931.75 for the property in question, and that at the time and place of the sale: "I wrote on an envelope the amount that I paid for the plaintiff on such property; that said envelope is hereto attached and by reference made a part of this affidavit; that the figures appearing on the envelope were made by me on the 18th day of March, 1933, and are in my handwriting and known to me to be correct and represent the sum that I bid for the plaintiff for said property." The envelope in question bears the return address of the sheriff of Marion county, Oregon. There are six cents in cancelled stamps upon it, and it is postmarked, "Salem, Oregon, March 20, 12:00 P. M., 1933", is addressed in typewriting to Weatherford and Wyatt, Attorneys at Law, Albany, Oregon, and contains, among other memoranda, the following pencilled notation:

"Bill for sheriff.
Amount bid—$2931.75
            3831.75
            2931.75
            ———
            900.00"

Mr. Wyatt was recalled to the witness stand after the envelope had been produced, and identified it as the one to which he had referred in his previous testimony and the pencilled notations as those he had made on the day of the sale.

Before the trial was concluded it developed that Mr. Wyatt was wholly mistaken in this and other portions of his testimony, as he himself frankly admitted. The envelope in question, as has been stated, was postmarked March 20, 1933, two days after the sale, and consequently could not have been used by the witness on the day of the sale.

An adjournment of the trial was taken, and during that interval a search of the files in Mr. Wyatt's office developed these facts: Under date of March 18, 1933, the defendant sheriff mailed the return of sale to the law firm of Weatherford and Wyatt at Albany in the envelope in question, with a letter signed on behalf of the sheriff by his deputy, Warren Richardson, which reads:

"Enclosed find sheriff's return of sale. If you find this satisfactory return to me and same will be filed with the county clerk."

Mr. Wyatt thereupon, in his office, made the pencilled memoranda above set forth upon the envelope and directed his stenographer to alter the return of sale accordingly. In the body of the return it is certified by the sheriff that: "I sold said real property * * * to C. G. Croisant for the sum of $3831.75." At the foot of the return, under the heading "Memorandum", are listed the various items, making up the total sum needed to satisfy the execution. A copy of

this part of the return as made out by the sheriff follows:

"Judgment ........................................ $3432.94
Interest ........................................ $   48.86
Costs ........................................ $   24.00
Attorney's Fee ........................... $  300.00
Clerk's Accrued Costs .................. $
Sheriff's Accrued Costs .............. $    5.25
Printing ..................................... $   20.70
    Total Execution ................... $3831.75
    Made on Sale ....................... $2821.75

                          $

"I therefore return said execution having received thereon the sum of $3831.75 bid by the plaintiff in the within case and applied upon the satisfaction of the within judgment in the sum of $3831.75."

Acting under the instructions of her employer, Mr. Wyatt's secretary erased the figures $2,831.75, wherever they appeared in the foregoing "memorandum", and typed in in their place the figures $2,931.75, and inserted the figures $900.00 in the blank space under $3,831.75 at the bottom of the column, to indicate the difference between the total execution and the sale price.

There is now no question that the foregoing are the facts. Not only did Mr. Wyatt, his memory having been refreshed, testify to them freely, but the return itself unmistakably shows that alterations were made in the figures; and, beyond that, Mr. Wyatt's secretary appeared as a witness and produced her stenographic notes made at the time, and these notes contain the instructions given her by her employer with respect to the alterations he desired. The only dispute which now remains is whether, as Mr. Wyatt insisted,

the figures were changed to conform to a bid actually made by him. This the defendants deny.

There is nothing to show when or in what manner the return came again into the hands of the sheriff. Mr. Wyatt does not appear to have written a letter of transmittal, and no one was able to testify upon the point. It was in fact returned to the sheriff some time before July 14, 1936, on which day it was filed with the clerk, under circumstances presently to be related.

The evidence of the plaintiff and Mr. Wyatt as to the amount bid for the property was contradicted by the deputy sheriff, Warren Richardson, who conducted the sale. He testified that the bid was $3,831.75. A book produced by him in which the sheriff's record of sales on execution was regularly kept, tends to confirm his version of the transaction. On the page of the book where the record of this sale was made, there appears in Richardson's handwriting a column of figures corresponding to those in the "memorandum" at the foot of the return, which we have set out above. Richardson testified that he showed these figures to the plaintiff and Wyatt before the sale, and that Wyatt then said to the plaintiff: "That will be our bid." On this page of the book also appears the entry, "Sold to plaintiff for $3831.75", which Richardson testified he made immediately after the sale. While Richardson professed to have an accurate and independent recollection of the sale and the amount bid, actually, and naturally, it might be added, in view of the lapse of time, his memory appears to have been not much better than Mr. Wyatt's because he testified on cross-examination that he had not sent the return of sale to Mr. Wyatt and had never done such a thing in any case. But, as we have

seen, he did send the return to Mr. Wyatt and did not hesitate to admit that he was mistaken about his previous testimony on this point when the letter which he had written enclosing the return was discovered.

As stated, the return was not filed with the clerk until July 14, 1936. It appears that the sale was made while the banks of this state were closed, for which reason neither the plaintiff nor his attorney could obtain funds with which to pay the sheriff's costs; and that later Mr. Wyatt was prevented from attending to business by a serious injury which he suffered. In the year 1936 Mr. Wyatt's associate, Mr. Mark Weatherford, took hold of the matter, paid the costs to the sheriff, who delivered the return to Mr. Weatherford, and he presented it to the clerk for filing. It was not until some time later that the discrepancy in the return was discovered—apparently in the course of other litigation related to the instant case. When demand was made upon the sheriff for the issuance of a deed reciting that the property in question was sold for $2,931.75, he refused, and eventually the present proceeding was commenced. In the meantime, the plaintiff had caused execution to issue for the sale of the Benton County property under attachment, and such sale was held and the property bid in by the plaintiff to satisfy what he considered was the balance of his judgment remaining unsatisfied after the Marion County sale. This sale was set aside by the circuit court for reasons not here material.

The purpose of this proceeding, as has been stated, is to obtain an adjudication that the amount bid and paid for the real property was $2,931.75, and to require the sheriff to execute a deed to the plaintiff so reciting. The petition, or motion, does not in terms ask that

the return of sale be amended, but obviously, since the return on file with the clerk, and so a part of the record, is the foundation upon which the deed must rest, an amendment of the return is a necessary prerequisite to the granting of the ultimate relief which the plaintiff seeks.

■ It is a general rule, well establisher by the authorities and not questioned by the plaintiff, that the court will not compel the sheriff to amend his return. The reason for the rule is thus stated in the well-considered opinion in *Philadelphia Saving Fund Society v. Purcell*, 24 Pa. Superior Ct. 205, 207:

"The sheriff is a commissioned officer acting under the solemnity of his official oath and under the obligation of his bond, and when he deliberately makes a return to a writ in proper and legal form and adheres to it, we know of no authority of law for compelling him to change it. If the return is false the party injured undoubtedly has his remedy, but that question is not now before us, and therefore we dismiss it."

The sheriff's return of sale in that case showed that the property was sold to one Allen for $2,500, and the petitioner, Black, sought to compel an amendment stating that the property was sold to him for $1,850. Upon the principle stated above, the attempt failed. In *Humphries v. Lawson*, 7 Ark. 341, the petitioner, a judgment debtor, alleged that the sheriff failed to credit the sum of $219.75 on an execution or judgment— the converse of the factual situation in the case at bar. The lower court refused to hear testimony in support of the petition and dismissed it, and on appeal its action was affirmed. In *Walter v. Palmer*, 18 Ind. 279, it was held that the court could not compel the sheriff to correct a description of lands sold in his return on an execution. Other authorities to the like effect—

and there seem to be none to the contrary—are: *Black-hills Brewing Co. v. Middle West Fire Ins. Co.*, 31 S. D. 318, 140 N. W. 687; *Flynn v. Kalamazoo Circuit Judge*, 138 Mich. 126, 101 N. W. 222, 4 Ann. Cas. 1167; Freeman on Executions, (2d Ed.) Vol. 2, § 358; 23 C. J., Executions, 800, § 800.

The plaintiff, while not disputing the doctrine of these authorities, asserts that this case comes within an exception or qualification of the rule, to the effect that where a return is incomplete or imperfect on its face, the court will compel the sheriff to make a complete or perfect return; and that here it is not sought to compel the sheriff to make a different return, but only to invoke the power of the court to ascertain the facts and declare which of the inconsistent provisions of the return is the correct one. We will consider the authorities cited in the brief to this proposition.

In 23 C. J., Executions, 801, § 833, it is stated in substance that the proper method of obtaining amendment of a return is by motion in the original cause and not by formal civil action, that the motion is determinable by the court without a jury, and that if a mistake is relied on, the party asking for an amendment should show the mistake beyond any reasonable doubt. To the latter proposition is cited *Scruggs v. Scruggs*, 46 Mo. 271, a case in which the sheriff was applying for leave to amend his return.

In *Ex parte Worley*, 19 Fed. 586, where a return did not describe real property, which had been levied on and sold, with sufficient particularity to enable the officer's successor to make a conveyance, the former officer was directed to so amend his return as specifically to describe such lands. Some general statements in the opinion seem to go further, but that is the extent of the holding.

In *Flynn v. Kalamazoo Circuit Judge*, supra, which is one of the cases relied on also by the defendants, the court applied the rule that the sheriff cannot be compelled by the court to amend his return, to a case in which a judgment debtor claimed that the sheriff's return of a sale of real property was false. The opinion cites numerous authorities in support of the ruling; but recognizes the accepted doctrine that the court may permit the amendment to be made on application of the sheriff; and, further, citing *Washington Mill Co. v. Kinnear*, 1 Wash. T. 101, that "if the return be defective he may be compelled to perfect it".

*Washington Mill Co. v. Kinnear*, supra, is the only other case cited by the plaintiff. The case had to do with a sheriff's return of process. It was sought to show that the return incorrectly stated that the copies of the complaint served on the defendants were certified, thus contradicting the return. The court held that this could not be done, saying:

"We know of no practice which will authorize a court in compelling a sheriff to contradict or vary a return made by him in conformity to the law."

This is followed by the language respecting a defective return already quoted.

No doubt the return now before us comes within the category of a defective or imperfect return. It contains mutually contradictory statements respecting the price for which the property was sold, so that it is impossible to determine from inspection of the return itself what that price was. Obviously, it ought to be corrected.

■■ But, can the court, in these circumstances, compel the sheriff to amend the return so as to conform to the plaintiff's notion of the facts? We think not. The

limits of the court's authority in that regard are thus stated by Mr. Freeman:

"It may be that the court may compel an officer to amend his return for the purpose of supplying obvious omissions therein. Thus in a case where a return did not describe real property, which had been levied on and sold, with sufficient particularity to enable the officer's successor to make a conveyance, the former officer was directed to so amend his return as to specifically describe such lands. This may be regarded as compelling a return, rather than as requiring a return already made to be amended; for though an indorsement was made on the writ which purported to be a return, it was not entitled to that name, because it omitted matters upon which, in the judgment of the court, it was the duty of the officer to speak in his return. *If we concede that the court may compel an officer to amend his return, the concession must be limited to enforcing a return sufficient on its face. The court cannot decide that particular acts were done or omitted, and then require the officer to amend his return to conform to such decision.*" (Italics supplied). 2 Freeman on Executions (2d Ed.) 1191, § 358.

The case referred to in the foregoing quotation is *Ex parte Worley*, supra, relied on by the plaintiff. The court did not in that case direct what description the sheriff should insert in his return, but only that he make the description definite.

The conclusion of Mr. Freeman is the only one conformable to sound principle. Any other would conflict with the general rule upon the subject. For, if, in a case like this, the court should require the sheriff to certify that he sold the property for one sum, when he stoutly maintains that he sold it for a different sum, it would be in effect the same as though the return in the first instance had been regular on its face and a like amendment had been compelled.

No authority announcing a contrary rule has been brought to our attention. The cases cited by plaintiff, as we have seen, go no further than to hold that the sheriff may be compelled, in the case of an imperfect return, to supply the defect; not that he supply it in a particular way. And the record in this case seems to emphasize the propriety and necessity of the rule. The only return prepared by the sheriff was one which showed throughout that he sold the property for $3,831.75. The entries in the sheriff's book made immediately before and immediately after the sale, in the regular course of official business, corroborate the return as so prepared. On the day of the sale, the sheriff executed—though he appears never to have delivered— a certificate of sale, which likewise certifies that the sale price was $3,831.75. There is no evidence that the changes made in the return by Mr. Wyatt were ever called to the attention of the sheriff or his deputy, or that they ever knew of them until years after the return was filed. The evidence is that they did not know of them. Mr. Wyatt was not authorized by the sheriff to make any changes. We may suppose that ordinarily a presumption would hold that the contents of the return as filed with the clerk were known to the sheriff; but, in view of the irregular treatment to which this document was subjected, without his knowledge or that of his deputy, we doubt whether even that presumption should be indulged.

On the other hand, the whole case of the plaintiff depends upon the recollection of the plaintiff and his then attorney respecting a transaction which occurred six years before the day when they gave their testimony. Their memories, as demonstrated by the statement of undisputed facts which we have given, were

greviously at fault. So, indeed, was the memory of the deputy sheriff, who swore at first and before he discovered his own letter which showed the contrary, that he had never sent the return to Mr. Wyatt, quite as earnestly and sincerely as the latter swore he had never seen it until the day of the hearing. The record, indeed, is a shining example of the fallibility of human testimony, particularly where the effort is to recall the details of events occurring long years in the past.

■ As we have said, this return, with is ambiguity and uncertainty, obviously ought to be corrected. The correction cannot be compelled, on the motion of the plaintiff, so as to make it read as he would desire. On the other hand, the court may undoubtedly permit the sheriff, on his application, to amend his return so that it will faithfully recite the facts. 2 Freeman on Executions (2d Ed.) 1192, § 358. The sheriff, in his answer, has not formally asked for such permission, but formal pleadings are not required in a proceeding of this character, and, since the sheriff has set forth his version of the facts, we deem it proper to treat the answer as a motion for leave to amend.

In the case of *Scruggs v. Scruggs*, supra, a former sheriff applied for leave to amend his return, made more than twenty years previously. The application was granted, over objection, because the sheriff was not dependent on his memory for the means of supplying the defects of his return, but those means, as the court said, "were readily supplied by reference to the sheriff's deed made at the time." It was urged that the court erred in refusing the defendants an opportunity to examine the sheriff as to the facts of the return. On this point the court said:

"It is not perceived, however, in the present instance, that the refusal operated any injury to the

defendants. After the lapse of so many years, the sheriff could not amend his return from a mere personal recollection of the facts, and ought not to have been permitted to do so. He had the facts under his own hand and official signature, fully and minutely set out in the deed, and that was his guide.''

We are not prepared to say that in this case the court would have been justified in following the procedure there approved. But, we think it proper upon this record to put to one side the testimony of witnesses, whether for the plaintiff or defendants, attempting to give their independent recollection of the facts, and to render a decision based upon the documentary evidence: the return as it was originally prepared, the sheriff's book in which the record of sales was kept, and the certificate of sale. That evidence shows satisfactorily that the property in question was bid in at the sale for $3,831.75. The order of the circuit court is therefore reversed, and the case is remanded with directions to enter an order permitting the sheriff to amend his return in accordance with the facts as herein found.

RAND, C. J., and ROSSMAN, BELT and BAILEY, JJ., concur.

KELLY and BEAN, JJ., not sitting.

---

Petition for rehearing denied December 17, 1940

ON PETITION FOR REHEARING

LUSK, J. The plaintiff has filed a petition for rehearing. The brief in support of the petition consists of a reargument of the facts. Nothing has been called to our attention which was not fully considered when the case was originally submitted to us. One error in

our statement of the facts, however, is pointed out which should be corrected. We said that after it was proven that the witness Richardson had written the letter dated March 18, 1933, enclosing the return of sale to the law firm of Weatherford and Wyatt, Richardson returned to the stand and admitted writing the letter. This was erroneous. But, inasmuch as no one now disputes the fact that Richardson did write the letter, it can have no effect on the decision. The controlling principles of law stated in the opinion are not questioned by the plaintiff. The petition for rehearing will therefore be denied.

RAND, C. J., and ROSSMAN, BELT and BAILEY, JJ., concur.

KELLY and BEAN, JJ., not sitting.